**UNITED STATES of America,**
**Plaintiff,**

v.

**Arthur L. HARRIS, Sr., et al., on petition of Luis C. Bandurraga for Writ of Error Coram Nobis, Defendants.**

**Cr. No. 24079-CD.**

United States District Court
S. D. California,
Central Division.

Aug. 22, 1957.

Supplemental Opinion Oct. 1, 1957.

4. See Note 3, supra.

Laughlin E. Waters, U. S. Atty. for Southern District of California, Los Angeles, Cal., by Louis Lee Abbott, Norman W. Neukom, and Ray H. Kinnison, Asst. U. S. Attys., Los Angeles, Cal., for the U. S.

Clifford E. Enger (of Enger & Yardum), Beverly Hills, Cal., for defendant Luis C. Bandurraga.

TOLIN, District Judge.

The petition presently before the Court is defendant Luis C. Bandurraga's application for a writ of error coram nobis to vacate and set aside a Judgment of this Court.

Petitioner was convicted by a jury, on April 6, 1956, of violations of 18 U.S. C.A. §§ 371, 1341. Following the Judgment of Guilty, petitioner perfected an appeal to the Circuit Court and subsequently, during the pendency of the appellate proceedings, filed this application for the common law writ. On November 9, 1956, this Court, noting that due regard for orderly judicial administration required it to abstain from determining petitioner's plea while the judgment thus sought to be vacated was under review on appeal,[1] refused to entertain the petition until Bandurraga had secured a remand from the Court of Appeals. Subsequently that Court made its Order[2]

---

1. Cf. Nemec v. United States, 9 Cir., 1950, 184 F.2d 355; United States v. Kobey, D.C.S.D.Cal.1953, 109 F.Supp. 687; Id., D.C.S.D.Cal.1952, 109 F.Supp. 192.

2.
"United States Court of Appeals
"For the Ninth Circuit

"United States of America, ( Appellee, (
v. ( No. 15222
"Arthur L. Harris, Sr., (
Arthur L. Harris, Jr., (
et al. (
Appellants. (
(

"Before Pope, Chambers and Barnes, Circuit Judges.
"Per Curiam.
"Luis C. Bandurraga, appellant here, has moved the court to remand this case to the district court to permit that court to hear and act upon Bandurraga's post-conviction motion for relief in the nature of a writ coram nobis.
"The motion sought to set aside appellant's conviction on the ground that he had been denied representation by counsel, as required by the Sixth Amendment. The claim is that appellant did not discover until after his conviction that his attorney at the trial was representing conflicting interests of other defendants. On the other hand appellant asserts, the trial judge knew from what transpired in chambers, that appellant's counsel deliberately rejected an opportunity to obtain dismissal of the case against appellant, and instead placed appellant on the stand in an effort to make use of him against his interest and for the benefit of the other defendants. The motion recites that the trial judge expressed doubts as to his power to act on the application for coram nobis now that appeal was pending, and suggested this motion to us. The United States has consented that the motion be granted.
"In this situation we think it is unimportant now to determine whether the requested remand is necessary in view of the fact that the motion for post-conviction relief is a collateral attack on the conviction, and based on an assertion of loss of jurisdiction through denial of a constitutional right. Cf. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. The trial court's doubt was well placed in view of Nemec v. United States, 9 Cir., 184 F.2d 355.* To avoid the necessity of passing upon that question we think it is within the power of this Court to grant the motion to remand for the purpose stated.

* "The § 2255 motion considered in Jordan v. United States District Court, 98 U.S.App.D.C. 160, 233 F.2d 362, was filed after conviction and while appeal therefrom was pending; yet without mention of this fact, the Supreme Court on November 12, 1956 [352 U.S. 904, 77 S.Ct. 151, 1 L.Ed.2d 114], reversed the Court of Appeals and ordered the motion heard."

permitting the determination of the petition although the appellate proceedings are still pending.

■ The Government contends that if Bandurraga is not limited to his appellate review, he can challenge the Judgment only by proceedings pursuant to Section 2255, Title 28 U.S.C.A.[3] That Section, however, can be invoked only by defendants "in custody" under the sentence attacked by the motion.[4] Since the meaning of the term "custody" as used in Section 2255 is the same as that familiar in habeas corpus proceedings,[5] relief under that Section is unavailable to one who, like petitioner, is free on bail pending appeal.[6] Petitioner is thus in a position to bring the common law writ which, under the All-Writs Section,[7] may be entertained by this Court.[8]

■ In his petition, Bandurraga alleges that he did not enjoy the effective assistance of counsel guaranteed to defendants in federal courts by the Constitution, Amendment VI. The Court, after hearing evidence, is satisfied that petitioner's counsel attempted to reconcile the conflicting interests of Bandurraga and certain co-defendants in such a manner that petitioner was deprived of the degree of representation to which he was constitutionally entitled.

Bandurraga was convicted under a multiple count indictment charging that the petitioner and his co-defendants violated and conspired to violate the Mail Fraud Statute, 18 U.S.C.A. §§ 1341, 371. The Government charged, and proved to the satisfaction of the jury, that Bandurraga, a sales manager, the Harris's, his employers, and certain other employees made or caused to be made serious misrepresentations to buyers of certain lots in a real estate subdivision operated by Harris, Sr., and Harris, Jr. All defendants were named in the same indictment and tried jointly.

The Harris's were represented by a veteran master of defense in cases of this kind. He was, furthermore, a very forceful and persuasive man. Counsel for Bandurraga and the other co-defendants was employed for them by the Harris's.

---

"We consider this such a motion as we are authorized by Criminal Rule 39 [18 U.S.C.A.] to entertain 'for directions to the district court'. The motion is granted and the district court is directed to hear and pass upon appellant's motion for relief in the nature of coram nobis."

> "Walter L. Pope
> Richard H. Chambers
> Stanley L. Barnes
> United States Circuit Judges

(Endorsed:) Filed Jan. 7, 1957,
Paul P. O'Brien, Clerk
A True Copy,
Attest, March 5, 1957
"(Seal)" Paul P. O'Brien
Clerk"

3. "Federal custody; remedies on motion attacking sentence. "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence * * *."

4. United States ex rel. Bogish v. Tees, 3 Cir., 1954, 211 F.2d 69; Fooshee v. United States, 5 Cir., 1953, 203 F.2d 247; United States v. Kerschman, 7 Cir., 1953, 201 F.2d 682; United States v. Lavelle, 2 Cir., 1952, 194 F.2d 202; United States v. Bradford, 2 Cir., 1952, 194 F.2d 197, certiorari denied 343 U.S. 979, 72 S.Ct. 1079, 96 L.Ed. 1371; Crow v. United States, 9 Cir., 1950, 186 F.2d 704; Lopez v. United States, 9 Cir., 1950, 186 F.2d 707.

5. United States v. Bradford, 2 Cir., 1952, 194 F.2d 197, certiorari denied 343 U.S. 979, 72 S.Ct. 1079, 96 L.Ed. 1371; Crow v. United States, 9 Cir., 1950, 186 F.2d 704.

6. Cf. In re Rowland, D.C.W.D.Ark.1949, 85 F.Supp. 550, affirmed sub nom Rowland v. State of Arkansas, 8 Cir., 1950, 179 F.2d 709, certiorari denied 339 U.S. 952, 70 S.Ct. 841, 94 L.Ed. 1365.

7. 28 U.S.C.A. § 1651(a).

8. United States v. Morgan, 1954, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248.

The evidence identifying Bandurraga to active misrepresentations contained several infirmities and, after the commencement of the defense case, the Court commented to counsel that if no further evidence connecting Bandurraga to certain misrepresentations was produced, a motion to acquit the petitioner would be granted at the close of evidence.

At this point there arose a conflict between the interests of Bandurraga and those of his co-defendants. The other defendants took the position that Bandurraga could supply evidence tending to exculpate them, and, therefore, should testify. The attorney employed for petitioner and others, on the other hand, testified at the hearing on this petition that had he represented Bandurraga alone, he would not have put petitioner on the stand. Counsel did not, however, express this view to Bandurraga, who remained unaware of the conflict of interests which had developed. Attempting to serve both Bandurraga and his other clients, who also desired petitioner's testimony, counsel limited his advice to the former to a statement that Bandurraga *need* not testify. Thus a vital choice of legal strategy was left wholly to the untrained judgment of petitioner.

Bandurraga, ignorant of the legal advantage of silence and having confidence in his own salesmanship, chose to testify. The decision was fatal to his defense. Upon the witness stand Bandurraga admitted his connection with the misrepresentations, thus curing the defect in the Prosecution's web of guilt. Although petitioner's account of the transactions was exculpatory in nature, it was so inherently improbable that, considering the manner and demeanor of the witness, the jury was amply justified in its verdict.

█ "In conspiracy cases, where the liberal rules of evidence and the wide latitude accorded the prosecution may,

and sometimes do, operate unfairly against an individual defendant, it is especially important that he be given the benefit of the undivided assistance of his counsel * * *." [9] Petitioner, having no knowledge of either the conflict of interests or the need for separate counsel, cannot be deemed to have waived this fundamental right. The failure of Bandurraga's attorney to accord him at a crucial point in the trial the independent representation to which petitioner was entitled taints the Judgment with constitutional infirmity. The material prejudice which resulted from the error requires that the writ be granted.

Counsel for the petitioner may submit Findings of Fact, Conclusions of Law, and Judgment vacating the former Judgment of Guilty.

### Supplemental Opinion

On the 22nd day of August, 1957, the Clerk filed this Court's Memorandum wherein a decision was announced that defendant-petitioner Luis C. Bandurraga was entitled to relief he then sought, i. e., to set aside and vacate a judgment of this Court because of infirmities which are described in said Memorandum. Counsel for defendant-petitioner was directed to prepare findings of fact, etc. When the findings were lodged a judgment was appended thereto which provided:

"It is therefore adjudged that the judgment of Guilty rendered against the petitioner, Luis C. Bandurraga, on the 6th day of April, 1956, is hereby vacated, and Judgment of Acquittal is hereby ordered to be entered."

This Court did not direct a judgment in that tenor. Insofar as the previous Memoranda directed to counsel to act, it read as follows:

"Counsel for the petitioner may submit Findings of Fact, Conclu-

---

9. Glasser v. United States, 1942, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680.

See Hayman v. United States, 1952, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232.

sions of Law, and Judgment vacating the former Judgment of Guilty."

As disclosed in this Court's Memorandum of August 22, 1957, the judgment could not stand because of a serious infirmity in the legal representation of Bandurraga during the trial which culminated in the judgment of conviction. A sequential infirmity therefore inhered in the judgment against Bandurraga. However, if it were not for that infirmity, the judgment would be good because the evidence received at the trial was amply sufficient to support a judgment of conviction.

■ By the proposed judgment which Bandurraga has lodged with his proposed findings, he has suggested to the Court that the result of this Court's finding must be a judgment of acquittal which would, of course, bar a re-trial of the case. He is not entitled to that. What the situation calls for is a reasonably prompt re-trial of the issues presented by the indictment and Bandurraga's plea of Not Guilty thereto.

There was a considerable period of time during which the writ of coram nobis was but little used in this country, and today many of the problems which could be posed by a petition for such a writ may as expeditiously be presented by a petition to vacate a judgment pursuant to the provisions of Title 28, U.S. C.A., § 2255.

The question presented by Bandurraga's tendering of a proposed judgment of acquittal is whether the granting of a petition for the writ of error coram nobis has the effect of acquitting the defendant. It does not. Under the Common Law the granting of such a writ only vacated the judgment. The judgment was annulled or revoked and the petitioner was left in the same position as if no judgment had been given. This rule has been stated as follows:[1]

"The judgment on a writ of error coram nobis is that the judgment complained of be recalled, revoked, and annulled, if the issue is found in favor of petitioner, whereupon the original suit is placed in the same position as it was when the judgment was rendered. * * *"

Had Bandurraga been committed to custody to serve his sentence, he could have resorted to Title 28, U.S.C.A., § 2255, and in some circumstances to habeas corpus. Neither habeas corpus nor the cited statute were available to Bandurraga because they come into play only to aid persons in custody, and Bandurraga was at liberty on bail. Except for the jurisdictional fact of "custody" in these two situations, the writ of error coram nobis is employed in similar situations to obtain a like result. In Williams v. Dowd[2], the Court, drawing language from another decision, said:

"* * * Referring to such proceedings—that is, to coram nobis proceedings—the Supreme Court of Indiana, in the case of State ex rel. Emmert v. Gentry, [223 Ind. 535] 62 N.E.2d 860, 861, [161 A.L.R. 532] said: 'We have repeatedly held that a coram nobis proceeding is in the nature of a motion for a new trial and that it is also in the nature of a civil action. It is the nature of the former because its object is to secure the setting aside of a judgment and a retrial of the matter upon which judgment had been rendered. * * *'".

Freeman on Judgments[3] correctly states the rule:

"The general rule is that when an order or judgment is vacated the previously existing status is restored and the situation is the same as though the order or judgment had never been made. The matters in controversy are left open for future

1. 49 C.J.S. Judgments § 313, p. 572.
2. 7 Cir., 1946, 153 F.2d 328, 330.
3. A Treatise of the Law of Judgments, by A. C. Freeman, 5th Ed., revised by Edward W. Tuttle in 1925, Vol. 1, § 302, pp. 594–595.

determination. The action is not thereby discontinued or abated, but is subject to further proceedings in regular course. The party in whose favor a judgment has been entered irregularly may, after it has been vacated, proceed as if it had never been rendered, and in due time and upon proper proceedings obtain a valid judgment. * * * "

Because the fact that defendant-petitioner Bandurraga did not have effective representation of counsel at an important point in his trial for felony is made clear in the previous memoranda, the Court now determines that further findings of fact and conclusions of law are not necessary, and will prepare its own form of judgment. Either party litigant may notice the cause for re-setting for trial.